Argued and submitted May 9, 2014, reversed and remanded January 21, on petition for reconsideration filed February 4, and response filed February 9, allowed by opinion April 6, 2016
See 277 Or App 384, 371 P3d 1222 (2016)

Shannon GOZZI, et al.,
*Plaintiffs,*

*and*

Jennifer ADAMS,
fka Jennifer Schuster,
and Nathan Surrett, individually
and on behalf of
all similarly-situated individuals,
*Plaintiffs-Respondents,*

*v.*

WESTERN CULINARY INSTITUTE, LTD;
and Career Education Corporation,
*Defendants-Appellants.*

Multnomah County Circuit Court
080303530; A152137

366 P3d 743

Jeff E. Scott argued the cause for appellants. With him on the briefs were Stephen F. English, Thomas R. Johnson, Misha Isaak, and Perkins Coie LLP; and Gregory Nylen and Greenberg Traurig LLP.

Maureen Leonard argued the cause for respondents. With her on the joint answering brief were David F. Sugerman and Brian S. Campf; and Tim Quenelle.

Before Ortega, Presiding Judge, and DeVore, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

In this class action, defendants—Western Culinary Institute, Ltd. (WCI) and its parent company, Career Education Corporation—assert an interlocutory appeal, under ORS 36.730(1)(a), of the trial court's order denying their motion to compel arbitration. Plaintiffs were students who attended defendants' culinary trade school known as Le Cordon Bleu between March 1, 2006 and March 1, 2010, and have asserted claims for fraud and unfair trade practices under Oregon's Unfair Trade Practices Act (UTPA). Defendants' motion to compel arbitration concerns a subclass of about 1,060 of the roughly 2,500 class members who signed enrollment contracts that included arbitration agreements governed by the Federal Arbitration Act (FAA), 9 USC sections 1 to 16. We reject without discussion defendants' second assignment of error, challenging the class itself, but address their contention, asserted in their first assignment of error, that a provision in the arbitration agreements delegates arbitrability and enforceability of the arbitration agreement to an arbitrator rather than to the court. That is, in defendants' view, plaintiffs' objections to the motion to compel arbitration—namely, that the arbitration agreement is unconscionable and that defendants waived their right to enforce the arbitration agreements because of their litigation conduct—must be resolved in arbitration and, consequently, the trial court erred when it decided those issues itself by denying the motion to compel arbitration.

Plaintiffs remonstrate that (1) the denial of the motion to compel is unreviewable because defendants failed to appeal the denial of a prior motion to compel arbitration and (2) the delegation provision in the arbitration agreements is ambiguous and, therefore, unenforceable. We review the denial of a motion to compel arbitration for legal error. *Citigroup Smith Barney v. Henderson*, 241 Or App 65, 69, 250 P3d 926 (2011). We conclude that the trial court's ruling is reviewable and that the delegation provision in the arbitration agreements requires that an arbitrator must decide whether plaintiffs' objections to the motion to compel arbitration are well-taken. Consequently, we reverse and remand.

The relevant procedural history is as follows. Plaintiffs filed an action against defendants in March 2008, alleging violations of the UTPA. In particular, plaintiffs allege that defendants failed to inform prospective students that their programs do not provide any material benefit because they prepare students only for low-paying entry-level jobs that they could have obtained without a culinary degree from Le Cordon Bleu. In May 2012, when defendants filed the subject motion to compel the subclass to arbitrate their claims, over four years had elapsed, plaintiffs had amended their complaint several times, defendants had answered with affirmative defenses asserting a right to mandatory arbitration of their claims and the parties had engaged in extensive discovery and had filed numerous motions.

The parties agree that the subclass's arbitration agreements are governed by the FAA, that the enrollment contracts and plaintiffs' claims implicate interstate commerce, and that the arbitration agreements provide that the FAA governs disputes within the agreement's scope. Section 2 of the FAA provides, in part:

> "A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

The United States Supreme Court has stated that the effect of section 2 "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 US 1, 24, 103 S Ct 927, 74 L Ed 2d 765 (1983). "And that substantive federal law of arbitrability—whether, under a contractual arbitration clause, a particular dispute must be decided by arbitration rather than in court—applies 'even in the context of state-law claims brought in state court.'" *Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 329, 142 P3d 1044 (2006) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 US 440, 445, 126 S Ct 1204, 163 L Ed 2d 1038 (2006)). Moreover, section 2 is "a congressional declaration of a liberal federal

policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Hospital*, 460 US at 24.

With that context in mind, we turn to the two motions to compel arbitration, which concerned two different arbitration agreements: (1) those agreed to by students—including class representative Surrett—who enrolled before November 2007 and (2) those agreed to by students who enrolled beginning in November 2007, *i.e.*, the subclass, and which are subject to this appeal. Discussion of the first motion to compel arbitration against Surrett[1] is relevant because plaintiffs argue that defendants' failure to appeal its denial renders the denial of the subject motion to compel arbitration unreviewable on appeal. Surrett, in common with the class members who are not part of the subclass at issue in the subject motion, had signed an enrollment contract before November 2007, which includes an agreement providing for arbitration of "[a]ny disputes or controversies between the parties to this Agreement arising out of or relating to the student's recruitment, enrollment, attendance, education or career service assistance by WCI or to this Agreement." Accordingly, defendants, asserting that plaintiffs' claims were within the scope of the arbitration agreement, moved to enforce that provision in Surrett's enrollment agreement in accordance with the FAA, noting that we had held that the FAA applies to arbitration agreements in enrollment contracts between private, for-profit post-secondary schools and their students. *See Harnisch v. College of Legal Arts, Inc.*, 243 Or App 16, 22, 259 P3d 67 (2011) (so stating). Anticipating that plaintiffs would argue that defendants had waived their right to compel arbitration,[2] defendants asserted that they neither acted inconsistently with a known right to arbitrate nor delayed their motion to compel arbitration because doing so earlier would have been futile.

---

[1] Gozzi is a former plaintiff and not a party to this appeal. Surrett eventually became class representative.

[2] *See Fisher v. A.G. Becker Paribas, Inc.*, 791 F2d 691, 694 (9th Cir 1986) (a party arguing waiver of arbitration rights "bears a heavy burden" and must show that (1) the adverse party knew of an existing right to compel arbitration; (2) the adverse party acted inconsistently with that right; and (3) the inconsistent act resulted in prejudice to the opposing party).

In support of the latter assertion, defendants argued that, before two recently decided United States Supreme Court opinions regarding arbitration agreements governed by the FAA, *AT&T Mobility LLC v. Concepcion*, 563 US 333, 131 S Ct 1740, 179 L Ed 2d 742 (2011), and *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 US 662, 130 S Ct 1758, 176 L Ed 2d 605 (2010), Oregon law would have treated Surrett's arbitration agreement as unconscionable and unenforceable under *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 152 P3d 940 (2007), in which we concluded that, among other reasons, an arbitration agreement's class-wide arbitration ban rendered the agreement unconscionable. According to defendants, *Stolt-Nielsen S. A.* established that arbitration agreements that are silent regarding class arbitration could not be interpreted to allow for class-action arbitration. And, until the Court in *Concepcion* abrogated the rule in *Discover Bank v. Superior Court*, 36 Cal 4th 148, 30 Cal Rptr 3d 76, 113 P3d 1100 (2005), which, broadly stated, deemed agreements that prohibit class-wide arbitration as *per se* unconscionable, Surrett's agreement would have been deemed unconscionable under *Vasquez-Lopez*.

In response, while contesting defendants' characterization of the *Concepcion* and *Stolt-Nielsen S. A.* holdings, as well as our holding in *Vasquez-Lopez*,[3] plaintiffs pointed out that the arbitration provision between Surrett and WCI had no class-action ban and, thus, defendants had waived their right to arbitrate because they could have asserted a right to arbitration much earlier in the litigation. Plaintiffs further argued that Surrett's arbitration agreement was

---

[3] Plaintiffs asserted that *Vasquez-Lopez* cannot be reduced to a conclusion that the arbitration agreement was unconscionable because of the agreement's class-action ban. Rather, the Oregon unconscionability analysis that we applied in *Vasquez-Lopez* had both a procedural and a substantive component, based on the facts in existence at the time the contract was made. Indeed, we concluded that the agreement was both procedurally unconscionable—plaintiffs were given an adhesion contract in a language that they did not understand—and substantively unconscionable—the agreement included a class-action ban and a cost-sharing provision for filing claims that was prohibitively expensive. *Vasquez-Lopez*, 210 Or App at 569-74. We note that recently, in *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 560, 340 P3d 27 (2014), the Oregon Supreme Court applied a similar procedural and substantive unconscionability approach to a negligence waiver and stated that determinations of unconscionability "must be based on the totality of the circumstances of a particular transaction."

unconscionable. The trial court denied defendants' first motion to arbitrate without explanation.

In May 2012, about a year after the first motion to compel arbitration, defendants filed the subject motion, but that second motion concerned the arbitration agreements of those class members who enrolled beginning in November 2007. Defendants contended that plaintiffs' arguments opposing the first motion to compel arbitration rested on the lack of an express class-wide arbitration ban in Surrett's arbitration agreement and that the subclass's enrollment contract includes a substantively different arbitration agreement, which expressly disallows class-wide arbitration of any claim within the scope of the arbitration agreement. And because, under *Concepcion*, arbitration agreements that have a provision prohibiting class-wide arbitration cannot be determined to be unconscionable and unenforceable on that basis, defendants argued that they had neither waived their right to compel arbitration nor could their motion to compel arbitration be denied on the basis that the arbitration agreement was unconscionable. Moreover, defendants contended that the subclass's arbitration agreement had another relevant provision—not present in Surrett's agreement— mandating that an arbitrator, not the court, must decide issues of enforceability. That delegation provision states:

> "Any dispute, claims, or controversies * * * arising out of or relating to * * * any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph (the 'Arbitration Agreement')."

Plaintiffs responded that the delegation provision is ambiguous because of the following severability provision in the arbitration agreement:

> "If any part or parts of this Arbitration Agreement are found to be invalid and unenforceable *by a decision of a tribunal of competent jurisdiction,* then such specific part or parts shall be of no force and effect and shall be severed, but the remainder of this Arbitration Agreement shall continue in full force and effect."

(Emphasis added.) Plaintiffs argued that, had defendants intended to limit review exclusively to an arbitrator, they

would have specified that a finding of invalidity must be made solely by an arbitrator, not a "tribunal of competent jurisdiction." At a hearing on the motion, the court indicated little about its view of the parties' arguments, explaining that the issues presented were in a "different context." It noted that it would examine the case law, but commented, quoting Yogi Berra, "I have a note here that says to myself, 'Déjà vu all over again.'" Ultimately, as it had with the first motion to compel arbitration, the trial court denied the second motion without written explanation.

On appeal, the parties reprise their arguments made below on the second motion, disagreeing on whether defendants waived the right to enforce the arbitration agreement and whether that agreement was unconscionable. Additionally, as noted, plaintiffs assert that the denial of the motion to compel arbitration is not reviewable on appeal.

We begin our analysis with plaintiffs' contention that the trial court's denial of the second motion to compel arbitration is unreviewable. According to plaintiffs, the Oregon Supreme Court's rationale in *Snider v. Production Chemical Manufacturing, Inc.*, 348 Or 257, 267-68, 230 P3d 1 (2010), in which the court concluded that an interlocutory appeal under ORS 36.730 was the exclusive means for appealing the denial of a motion to compel arbitration, supports a conclusion that subsequent motions to compel arbitration concerning the same legal issues are not reviewable on appeal. That is, plaintiffs posit that defendants' failure to appeal the denial of the first motion to compel arbitration rendered that denial final and unreviewable by means of a subsequent motion to compel arbitration because the trial court may have denied the second motion for the same reasons that it denied the first motion.

In *Snider*, the defendants moved to compel arbitration five weeks before trial, and the trial court denied the motion. 348 Or at 260. The defendants declined to assert an interlocutory appeal under ORS 36.730(1)(a), electing instead to assign the trial court's denial as error in its appeal of the general judgment under ORS 19.270. 348 Or at 260. At issue in *Snider* was whether ORS 36.730 is the exclusive means for appealing the denial of a motion to compel arbitration. 348 Or at 264. The defendants argued that,

because ORS 36.730(1)(a) provides that "[a]n appeal *may* be taken from * * * [a]n order denying a petition to compel arbitration" (emphasis added), the term "may" implies that such an interlocutory appeal under ORS 36.730 is permissive and does not foreclose an appeal after final judgment is entered. 348 Or at 265.

In rejecting that argument, the court reasoned that, although it is true that the term "may" is permissive, in the context of ORS 36.730, the word indicates only that a defendant was not *required* to appeal a denial of a motion to compel arbitration; such permission "does not reveal the consequences of failing" to appeal. 348 Or at 265. Further, the court reasoned that, because only denials may be the subject of an interlocutory appeal, the legislature

"wanted to have the issue of arbitrability be decided quickly and finally before the parties went to the expense and effort of trying their case in court. There would be little point in waiting until the trial was over before finding out that the case should have been arbitrated rather than tried."

*Id.* at 266. Consequently, the court held that an interlocutory appeal under ORS 36.730 is the exclusive means for appealing a denial of a motion to compel arbitration and, thus, a challenge to such a denial in the context of a post-judgment appeal is not reviewable by an appellate court. 348 Or at 267. "In effect, ORS 36.730 reflects the legislature's intent to remove orders denying petitions to compel arbitration from the category of intermediate orders that otherwise would be reviewable on appeal from the general judgment." 348 Or at 268.

Plaintiffs here point to the legislative intention discerned by the *Snider* court that issues of arbitrability "be decided quickly and finally before the parties [go] to the expense and effort of trying their case in court," 348 Or at 266, and contend that "allowing continuous motions to compel arbitration—each one subject to interlocutory appeal— would undercut the legislature's goal of early and final resolution of the arbitration issue." However, we see nothing in the text of ORS 36.730 or in the *Snider* court's reasoning that suggests that subsequent motions to compel arbitration are not reviewable. Appeal of the denial of a second motion to compel arbitration made *before* trial does not subvert the

legislature's intention that issues of arbitrability "be decided quickly and finally before the parties [go] to the expense and effort" of a trial.

The crux of plaintiffs' argument is that defendants' second motion to compel arbitration undermined the intention behind ORS 36.730 because it "raised the same issue—that the contract required individual arbitration of claims—and defended against the same issues—waiver and unconscionability—that had been resolved in the first motion." Plaintiffs invoke the "law of the case" doctrine, stating that the trial court may have denied defendants' second motion "because defendants were bound by the outcome in the first motion." In other words, they argue that the denial of the first motion has preclusive effect as to the second motion.

We have stated that the "scope of the 'law of the case' doctrine is somewhat amorphous." *Poet v. Thompson*, 208 Or App 442, 450, 144 P3d 1067 (2006). As the Supreme Court has explained:

> "'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'"

*State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993) (quoting *Simmons v. Wash. F.N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)). Ordinarily, the doctrine gives "preclusive effect to legal rulings made or sustained in prior appeals in the same litigation" but may also apply to trial court rulings within the same case when a court rules on a legal question and the question is raised in the same court. *Poet*, 208 Or App at 450: *But see Kennedy v. Wheeler*, 356 Or 518, 531, 341 P3d 728 (2014) ("The term 'law of the case' is best reserved for use in the context in which a party seeks to relitigate an appellate decision. Use of the term to address other issues may confuse rather than clarify." (Citation omitted.)). Importantly, however, a trial court's decision to give preclusive effect to its prior decision is a *prudential* decision

that takes into consideration the policies underlying the doc-trine, which are "consistency of judicial decision, putting an end to litigation matters once determined, and preserving the court's prestige," and the rationale that "'a court should adhere to a previous ruling on an identical matter, whether rightly or wrongly decided, in order to advance the polices enumerated above.'" *Poet*, 208 Or App at 450-51 (quoting *Koch v. So. Pac. Transp. Co.*, 274 Or 499, 511-12, 547 P2d 589 (1976)).

However, because the trial court did not explain its basis for the denials of either motion, it is not appar-ent what determinations of "law" the court may have made. More specifically, we do not know whether the court denied the second motion because it decided to adhere to its bases for denying the first motion. The court's comment—"I have a note here that says to myself, 'Déjà vu all over again'"—likewise is insufficient to support a conclusion that it denied defendants' motion based on law-of-the-case principles. After the court made that comment, it acknowledged that the issues presented were in "a different context" and indi-cated that it needed to review the cases cited by the par-ties. Moreover, the differences between Surrett's arbitration agreement and the subclass's arbitration agreement, and the arguments advanced by defendants particular to the latter, suggest that the court did not necessarily decide the second motion on the same basis as the first. That is, the sub-class's arbitration agreement included a provision expressly disallowing class-wide arbitration. In opposition to the first motion to compel arbitration, plaintiffs contended that defendants' arguments based on *Concepcion* were inappo-site because Surrett's arbitration agreement lacked a pro-vision requiring class arbitration. Further, unlike Surrett's arbitration agreement, the subclass's agreement has a del-egation provision, which alters the approach, as we discuss below, to plaintiffs' waiver and unconscionability objections. Put differently, defendants' second motion to compel arbi-tration did not constitute the proverbial "second bite at the apple."

Accordingly, we reject plaintiffs' contention that the court decided identical issues on both motions so as to preclude our review of defendants' challenge to the trial

court's denial of the second motion to compel arbitration.[4] Defendants filed a timely interlocutory appeal of the denial of that motion, and we therefore proceed to review the parties' arguments regarding the delegation provision.

As noted, defendants argue that the issues of waiver by litigation conduct and unconscionability—raised by plaintiffs as objections to defendants' motion to compel arbitration and responses on appeal—are for the arbitrator to decide, not the court, because the agreement delegates questions of arbitrability and enforceability to the arbitrator. As we explain, we reject plaintiffs' contention that the delegation provision does not "clearly and unmistakably" delegate issues of enforceability and arbitrability to the arbitrator because it is rendered ambiguous by the severability provision. Our conclusion obviates the need to reach plaintiffs' arguments regarding waiver by litigation conduct and unconscionability, as those must be addressed to the arbitrator.

Again, the agreement states:

> "Any dispute, claims, or controversies *** arising out of or relating to *** any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph (the 'Arbitration Agreement')."

In support of their argument that, under that delegation clause, plaintiffs' arguments regarding waiver and unconscionability are matters of "arbitrability," "validity," and "enforceability" of the arbitration agreement and, thus, are to be decided by an arbitrator, defendants primarily rely on the United States Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 US 63, 130 S Ct 2772, 177 L Ed 2d 403 (2010). In that case, the Court addressed the question "whether, under the [FAA], a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." 561 US at 65. The arbitration agreement at issue in that case had a delegation provision, which provided that

---

[4] By rejecting plaintiffs' contention that the law of the case doctrine applies, we do not foreclose the possibility that preclusion principles may apply in future proceedings.

"[t]he Arbitrator \* \* \* shall have exclusive authority to resolve any dispute relating to the \* \* \* enforceability \* \* \* of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66.

The plaintiff challenged the entire arbitration agreement as unconscionable because of the agreement's fee-splitting arrangement and limitations on discovery and sought to have the district court decide the issue of unconscionability. In the plaintiff's view, the unconscionability of the agreement as a whole rendered the specific delegation provision unconscionable. Noting that the FAA "reflects the fundamental principle that arbitration is a matter of a contract" because Section 2 "places arbitration agreements on an equal footing with other contracts" and "requires courts to enforce them according to their terms," the Court rejected the plaintiff's argument and reasoned that, "had [the plaintiff] challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." *Id.* at 67, 74 (emphases in original). That was so because the plaintiff was required to challenge the delegation provision because "Section 2 [of the FAA] operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce." *Id.* at 72. Thus, unless the plaintiff "challenged the delegation provision specifically, we must treat it as valid under [section] 2, and must enforce it \* \* \*, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* The Court acknowledged a caveat to the rule: that, under *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 115 S Ct 1920, 131 L Ed 2d 985 (1995), "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so.'" *Rent-A-Center, West, Inc.*, 561 US at 69 n 1 (quoting *First Options of Chicago, Inc.*, 514 US at 944 (brackets in *Rent-A-Center, West, Inc.*)).[5]

_____
[5] That a provision in an arbitration agreement must "clearly and unmistakably" indicate that the parties intended to delegate issues of arbitrability to an arbitrator is a heightened standard that departs from how we ordinarily interpret arbitration agreements. *See Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 147, 227 P3d 796 (2010) ("Oregon, like the federal courts, recognizes

It follows, defendants contend here, that, because the delegation provision "clearly and unmistakably" delegates questions of enforceability and arbitrability to an arbitrator, plaintiffs must specifically challenge the validity of the delegation provision. Plaintiffs dispute that contention, arguing that, unlike the arbitration agreement in *Rent-A-Center, West, Inc.*, the subclass's delegation provision is rendered ambiguous by the following severability provision in the arbitration agreement:

> "If any part or parts of this Arbitration Agreement are found to be invalid and unenforceable by a decision of a tribunal of competent jurisdiction, then such specific part or parts shall be of no force and effect and shall be severed, but the remainder of this Arbitration Agreement shall continue in full force and effect."

In plaintiffs' view, a "tribunal of competent jurisdiction" necessarily means a *court* and, thus, the severability provision assigns the task of deciding the validity and enforceability of the arbitration agreement to a court rather than to an arbitrator. Consequently, according to plaintiffs, because the arbitration agreement delegates determinations of enforceability and validity to two different decision makers, the delegation provision is ambiguous.

In support of that argument, plaintiffs urge us to follow a California decision, *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal App 4th 1425, 1442-45, 140 Cal Rptr 3d 38 (2012), in which the court reasoned that the severability provision in that case—"if any court determines that this Agreement in its entirety shall not be enforced, such determination shall be effective only as to the Covered Employees who reside in the state where such court is located, and not as to any other Covered Employees"—was inconsistent with the delegation provision and was therefore distinguishable from the delegation provision in *Rent-A-Center, West, Inc.* Heeding the Court's caution in *Rent-A-Center, West, Inc.*, 561 US at 69 n 1, that courts should not assume that a provision "clearly and unmistakably" delegates the question of arbitrability to the arbitrator, the *Peleg* court concluded that

---

a presumption in favor of arbitrability" when interpreting the provisions of arbitration agreements).

"[t]he delegation provision states that the arbitrator is to decide whether the Agreement is enforceable while the severability provision contemplates that a court has the same authority. *** [T]he Agreement's statement in the severability provision that a *court* may decide the question of enforceability creates an ambiguity as [to] whether an arbitrator should decide if an arbitration contract is enforceable."

204 Cal App 4th at 1444-45, 140 Cal Rptr 3d at 51 (emphasis in original).

We decline to follow *Peleg*, concluding instead that the severability provision in this case does not render the delegation provision ambiguous, for three reasons. First, the severability provision provides for severability in the event that a "tribunal of competent jurisdiction" decides that a provision is invalid or unenforceable. As defendants note, an arbitrator or an arbitration panel can constitute a "tribunal of competent jurisdiction." *See Rueda v. Union Pacific Railroad Co.*, 180 Or 133, 166, 175 P2d 778 (1946) (describing arbitrators as an "arbitral tribunal"); *Black's Law Dictionary* 1544 (8th ed 2004) (a "tribunal" is "a court or other adjudicatory body"). Thus, the severability provision allows for the possibility that an arbitrator could determine that a provision is invalid and unenforceable. Compare the severability provision here to that in *Peleg*, which refers only to a "court," implicitly precluding an arbitrator from applying the provision. In this case, because an arbitrator can apply the provision under the arbitration agreement, the delegation and severability provisions are reconcilable in a way that the provisions in *Peleg* were not.

Second, defendants assert that the severability provision does not confer jurisdiction; it provides instruction to the body that has claimed jurisdiction. We agree. The delegation provision provides that objections to arbitrability or enforceability "shall be resolved" by arbitration. That mandatory directive, *see Cain v. Rijken*, 300 Or 706, 718, 717 P2d 140 (1986) (in statutory context, "shall" connotes "a mandatory duty"), contrasts with the conditional nature of the severability provision, which states that, "[i]f any part or parts of this Arbitration Agreement are found to be invalid and unenforceable," the invalid provision or provisions are

severable. (Emphasis added.) The conditional posture of the provision accommodates, although the delegation provision mandates that an arbitrator decides whether the agreement is invalid or unenforceable, the eventuality that a dispute between the parties lands in court and not before an arbitrator—as happened in this case—and where the court does not declare the entire agreement invalid, but rather only the contested provision.

Third, the text of the severability provision fits within the framework established in *Rent-A-Center, West, Inc.* As noted, the Supreme Court held that, unless a party "challenge[s] the delegation provision specifically," the provision is treated "as valid under [section] 2, and [a court] must enforce it * * *, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, West, Inc.*, 561 US at 72. By allowing for a determination of invalidity or unenforceability by a court, the severability provision allows for a challenge to the delegation provision in particular, which the Court stated was the only avenue for challenging an arbitration agreement that has a delegation provision. If so challenged and the court declares the provision invalid, it *is* severable from the remainder of the agreement. Put differently, by broadly extending the severability provision to tribunals of competent jurisdiction, the agreement allows for a court to determine that a delegation provision is unconscionable or invalid.

Accordingly, we find unavailing plaintiffs' challenge to the delegation provision on grounds that the severability provision creates an ambiguity and, thus, the agreement does not "clearly and unmistakably" delegate questions of enforceability and arbitrability to an arbitrator. *See, e.g., Awuah v. Coverall North America, Inc.*, 554 F3d 7, 11 (1st Cir 2009) (that "agreements have a severability clause allowing other provisions to survive if a 'court of competent jurisdiction' invalidates a provision * * * is too thin a basis for concluding that the agreement's language" delegates arbitrability questions to the court). Thus, we conclude that the trial court erred when it denied defendants' motion to compel arbitration of the subclass's claims.

Reversed and remanded.