Argued and submitted May 17, 2019, affirmed September 23, 2020

Jason WARREN,
*Plaintiff-Respondent,*

*v.*

SMART CHOICE PAYMENTS, INC.;
Wholesale Merchant Processing, Inc.;
North American Processing Solutions, LLC;
and Todd McCartney,
*Defendants-Appellants.*

Washington County Circuit Court
17CV05531; A166758

475 P3d 444

Defendants appeal from a trial court order denying their petition to compel arbitration after plaintiff sued them for breach of contract, unjust enrichment, and fraud. Defendants contend that the court erred by (1) concluding that a 2008 agreement between the parties with an arbitration clause was superseded by a 2009 agreement that did not require arbitration and (2) deciding in the alternative that, if the 2008 agreement survived, its arbitration clause was unconscionable and therefore unenforceable. *Held*: The Court of Appeals concluded that the 2009 agreement superseded the 2008 agreement and did not require arbitration of the dispute. As a result, the court did not reach the trial court's alternative conclusion that the 2008 arbitration clause was unconscionable.

Affirmed.

Beth L. Roberts, Judge.

Kevin J. Jacoby argued the cause and filed the briefs for appellants. Also on the reply brief was Colin P. Mackenzie.

Michael A. Cox argued the cause for respondent. Also on the brief was Law Office of Michael A. Cox.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Defendants appeal from a trial court order denying their petition to compel arbitration. Defendants assign error to the trial court's denial, contending that the court erred in (1) concluding that a 2008 agreement with an arbitration clause was superseded by a 2009 agreement that did not require arbitration and (2) deciding, in the alternative, that, if the 2008 agreement survived, its arbitration clause was unconscionable and unenforceable. We conclude that the court did not err when it concluded that the 2009 agreement superseded the 2008 agreement and did not require arbitration of this dispute. As a result, we do not reach the court's alternative conclusion that the 2008 arbitration clause is unconscionable. We, therefore, affirm.

We begin with the background to this dispute. The facts relevant to our resolution of the arbitration issue on appeal are uncontested. The underlying dispute arose between plaintiff Jason Warren, on one side, and defendant Todd McCartney and entities owned or controlled by McCartney, on the other side. Plaintiff was initially hired in March 2007 by defendant McCartney's wholly-owned company, Wholesale Merchant Services, Inc. The parties entered into a "Contract of Employment" in March 2007 that was executed by plaintiff and defendant McCartney on behalf of Wholesale Merchant Services. Plaintiff was identified as an employee in the agreement. There is no clause mandating arbitration of any disputes in the March 2007 agreement.

Plaintiff was hired to sell or lease credit card processing equipment and services to potential business customers; was provided "leads" for potential business and directed to make sales calls on those businesses; and was asked to relocate from Oregon to Sacramento, California. Plaintiff alleges that he was promised commissions on sales of any equipment to merchants and also promised future commissions or "residuals" when those merchants made ongoing payments for credit-card processing services.

At some point prior to May 2008, defendant McCartney asked plaintiff to enter into a new agreement with a different entity McCartney owned, defendant

Wholesale Merchant Processing, Inc. Plaintiff and Wholesale Merchant Processing entered into an agreement in May 2008 (the 2008 agreement). Unlike the prior agreement, the agreement identified plaintiff as an independent contractor rather than an employee. The 2008 agreement provided a section for payment of fees, which stated that, "[d]uring any period of time in which this Agreement remains in full force and effect, compensation to Independent Contractor will be paid as set forth" in an attached schedule. Significant to this dispute, the 2008 agreement included a dispute resolution provision, which spelled out the parties' obligation to try to resolve any disagreement, and was immediately followed by an arbitration clause, which provided, in relevant part:

> "All disputes that cannot be resolved pursuant to the internal issue resolution process identified above will be submitted to and settled by final and binding arbitration. The arbitration will take place in Portland, Oregon, and will apply the governing law of this Agreement. The final and binding arbitration will be performed by a panel of three arbitrators in accordance with and subject to the Commercial Arbitration Rules of the AAA then in effect. * * * The decision of the arbitrators will be final and binding, and judgment on the award may be entered in any court of competent jurisdiction."

The 2008 agreement also contained a provision that the dispute resolution and arbitration provisions, among others, "shall survive termination of this Agreement."[1]

        Plaintiff maintains that he agreed to enter into that new agreement based on the condition that any "residuals" resulting from ongoing merchant accounts would be

---

[1] We note that, in addition to, or perhaps despite, that arbitration clause, the 2008 agreement also curiously contained the following jurisdiction and venue provision, which provides, in relevant part:

> "The parties hereby agree that any suit to enforce any provision of this Agreement or arising out of or based upon this Agreement or the business relationship between the parties hereto shall be brought in federal or state court in Portland, Oregon. Each party hereby agrees that such courts shall have exclusive personal jurisdiction and venue with respect to such party, and each party hereby submits to the exclusive personal jurisdiction and venue of such courts."

Based on our analysis later in this opinion that the later 2009 agreement superseded the 2008 arbitration clause, we do not need to address this potential conflict between the arbitration and litigation-venue provisions in the 2008 agreement.

"vested" and earned even if he was terminated from his position. Although there were some substantive changes to the agreement, plaintiff's job duties did not change after that agreement except in the fact that he now reported to Wholesale Merchant Processing.

In November 2009, Wholesale Merchant Processing and plaintiff entered into a new agreement (the 2009 agreement). Plaintiff became a sales manager for Wholesale Merchant Processing and worked out of an Oregon office. The 2009 agreement identified plaintiff as an employee again. It did not specifically define plaintiff's wages or compensation, but noted that the "compensation or other monies paid or to be paid to [plaintiff] by Wholesale Merchant Processing" is consideration for plaintiff's employment.

Notable for this dispute, the 2009 agreement had a broad integration clause, which provided:

> "There are no terms, conditions or obligations made or entered into by the parties other than as contained herein. This agreement, upon execution, shall supersede any and all other employment and compensation agreements between the Corporation and the Employee."

Also important to this opinion, there was no arbitration clause in the 2009 agreement. In fact, the agreement included several provisions that indicated that the parties anticipated that disputes "under" or "arising out of" or to "enforce" the 2009 agreement would be resolved through a "lawsuit," "suit," or sometimes "action," but never referenced arbitration. The mandated venue for any such "suit" was Multnomah County.

Later, in 2014, plaintiff began to work with defendants Smart Choice Payments, Inc., and North American Processing Solutions, LLC. Plaintiff has never had an arbitration agreement with either entity.

In February 2017, plaintiff filed an action in Washington County against defendants. Plaintiff alleged that he had been terminated in September 2015 and had not been paid the "future" commissions and residuals that defendants had promised to pay him when defendants received ongoing payments for merchant-processing services

and equipment that plaintiff or his team had originally arranged to sell or rent to defendants' customers. Plaintiff alleged claims for breach of contract, unjust enrichment, and fraud. As to the breach of contract claim, plaintiff alleged the promises that were breached, but did not make clear whether he was claiming defendants' breach of a particular written or oral agreement. Plaintiff later filed an amended complaint that continued to identify the promises that were breached but did not identify a particular contract, such as the 2008 or 2009 agreement or some other agreement. After that filing, defendants deposed plaintiff. Plaintiff testified that the 2008 agreement provided at least a "portion" of the support for his claim that he had been promised to be paid future commissions and residuals for the sales and rentals that he had arranged to make to defendants' customers.

Defendants then petitioned to stay the litigation and compel arbitration, contending that plaintiff's claims arose out of the 2008 agreement between Wholesale Merchant Services and plaintiff, and, therefore, the claims were subject to arbitration under the 2008 agreement's arbitration clause. Plaintiff opposed the petition, contending, among other things, that the 2008 agreement's arbitration clause was superseded by the same parties' 2009 agreement that does not provide for arbitration but anticipates potential litigation. Plaintiff also contended that, if the 2008 agreement controlled, it was a contract of adhesion and the arbitration clause was unconscionable. As noted above, the trial court agreed with both of plaintiff's arguments and denied the petition to compel arbitration and stay the litigation.

We turn to the legal arguments before us and the standard of review. On appeal, the parties reprise the arguments that they made in the trial court. We review the denial of a petition to compel arbitration for legal error. *Lumm v. CC Services, Inc.*, 290 Or App 39, 43, 414 P3d 454 (2018).

We begin with a brief background on the law governing arbitration agreements. As a general rule, arbitration agreements that involve interstate commerce are subject to federal arbitration law and state contract law. Section 2 of the Federal Arbitration Act (FAA), in relevant part, provides:

> "A written provision in \*\*\* a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 USC § 2. "Moreover, section 2 is 'a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Gozzi v. Western Culinary Institute, Ltd.*, 276 Or App 1, 4-5, 366 P3d 743, *adh'd to as modified on recons*, 277 Or App 384, 371 P3d 1222 (2016) (quoting *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 US 1, 24, 103 S Ct 927, 74 L Ed 2d 765 (1983)). The parties do not dispute that section 2 of the FAA governs the arbitration clause at issue in the 2008 agreement.

Section 2 "create[d] a body of federal substantive law, which was applicable in state and federal courts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 US 440, 445, 126 S Ct 1204, 163 L Ed 2d 1038 (2006) (brackets in original; internal quotation marks omitted). As we explained in *Lumm* after summarizing the relevant United States Supreme Court case law, an arbitration agreement may be invalidated "based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." 290 Or App at 44 (internal quotation marks omitted).

As noted, the trial court agreed with plaintiff's argument that the 2009 agreement superseded the 2008 agreement's arbitration clause and did not require arbitration of this dispute. Defendants' arguments to the contrary are threefold, and we address each in turn.[2]

First, defendants contend that the trial court erred in concluding that the 2009 agreement superseded the 2008

---

[2] We note that defendants do not contend that only the arbitrator and not the trial court has the authority to decide whether this dispute is arbitrable. As a result, we do not reach that issue.

agreement as it relates to the arbitration clause because the 2009 agreement does not specifically state that any prior arbitration agreements are superseded and is "silent as to arbitration." As we explain below, that argument ignores the clear text of the 2009 agreement, which provides that it "shall supersede any and all other employment and compensation agreements between the Corporation and the Employee." Indeed, defendants concede that the 2008 agreement is a compensation agreement. That concession is appropriate because the 2008 agreement has a section addressing the payment of fees to plaintiff and references a schedule with a "compensation plan." The 2008 agreement is a compensation agreement.

Plaintiff contends that the 2009 agreement is a partially integrated writing that supersedes inconsistent terms in prior agreements, including those in the 2008 agreement. Plaintiff notes that the 2009 agreement, which anticipates the possibility of litigation and does not require arbitration, is inconsistent with the 2008 agreement's arbitration clause. Defendants agree that the 2009 agreement is a partial integration. Defendants contend, however, that the 2009 agreement is "silent as to arbitration" and, therefore, is not inconsistent with and does not supersede the 2008 arbitration clause.

We assume for this appeal, as the parties do, that the 2009 agreement is a partial integration. "A partially integrated writing is one that the parties intended to be a final expression as to the terms in the writing, but *not* as to all the terms of their agreement." *Abercrombie v. Hayden Corp.*, 320 Or 279, 288, 883 P2d 845 (1994) (emphasis in original). As the Supreme Court has stated,

> "[a] partial integration may not be contradicted, but it may be supplemented by evidence of prior consistent, additional terms. A partially integrated writing supersedes or discharges all prior agreements, written or oral, to the extent that the prior agreements are inconsistent with the partial integration."

*Id*. at 289 (citations omitted). The terms of the 2009 agreement do not include an arbitration clause, but anticipate the possibility of a "lawsuit" or "suit" or "action" to resolve

disagreements. Venue for such a "suit" was in Multnomah County. Those terms, individually and collectively in the agreement, unambiguously indicate that disputes will be resolved by litigation in court and not through a less formal proceeding before an arbitrator or arbitration panel. The terms of the 2009 agreement are entirely inconsistent with and supersede the 2008 arbitration clause. Those terms are not silent as to arbitration, as defendants claim, but are inconsistent with arbitration.[3]

We turn to defendants' second argument, that the 2008 arbitration clause was not superseded because the 2008 agreement provides that the dispute resolution and arbitration sections of that agreement, among several other sections, "shall survive termination of this [a]greement." Defendants' second argument fails for the same reason as its first. To the extent that defendants contend that the arbitration section survives the 2008 agreement, that obligation is entirely inconsistent with the 2009 integration clause, which states that there are no other obligations between the parties and that the 2009 agreement supersedes all prior agreements. As discussed above, an ongoing arbitration agreement is also inconsistent with the terms of the 2009 agreement that does not discuss arbitration and anticipates that litigation in court will be used to resolve disputes.

Defendants' third and final argument is that, if we conclude that the compensation terms of the 2008 agreement survive, we must also conclude that the 2008 arbitration clause survives. They further contend that, if we were to do otherwise, we would disfavor arbitration agreements in violation of federal law. We do not decide which terms of the two compensation agreements control or what evidence may be admitted to prove plaintiff's employment compensation terms. That issue is not before us and was not litigated in the trial court. Indeed, the specific compensation schedule to the 2008 agreement is not part of our record. Further, the 2009 agreement has no defined compensation terms

---

[3] Both parties rely on case law from federal and other state jurisdictions. Those cases are dependent on the particular initial and superseding agreements at issue as well as the agreements' specific arbitration and integration clauses. Although instructive, they do not persuade us either way in interpreting the agreements before us under Oregon law.

outside of a general reference that the consideration for the agreement includes "compensation or other monies paid or to be paid to [plaintiff] by Wholesale Merchant Processing." There is no record in the trial court yet of plaintiff's compensation terms, and the court did not decide what terms control. That issue remains to be decided based on the factual record developed on remand.

Defendants, nevertheless, contend that it would disfavor arbitration and hold arbitration clauses to more exacting scrutiny in violation of the FAA if the arbitration clause in the 2008 agreement were superseded and not carried forward with the compensation terms that defendants contend were bound up with the arbitration clause. In other words, defendants contend that, if the 2008 arbitration clause is superseded, then any 2008 agreed compensation terms are similarly superseded because they must be placed on equal footing under federal arbitration law.

Plaintiff contends that, because the 2009 agreement is not fully integrated and not in conflict with the 2008 agreement as to compensation, any evidence of compensation in 2008 remains relevant to what the parties agreed as to compensation in 2009. That is, plaintiff contends that, because the 2009 agreement left the precise compensation terms undefined, the 2008 agreement can at least be used as evidence for determining what promises were made to him regarding compensation at that time.

We reject defendants' final argument as well. As we observed earlier, an arbitration agreement may be invalidated "based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Lumm*, 290 Or App at 44 (internal quotation marks omitted). The rules surrounding integrated agreements and integration clauses derive from the parol evidence rule, which is a substantive rule in contract law. *Abercrombie*, 320 Or at 286. Those rules reflect long-established and generally applicable contract principles. *See Hatley v. Stafford*, 284 Or 523, 530, 588 P2d 603 (1978) (tracing the roots of the parol evidence rule, now adopted by statute, back to the law governing contracts

made under the "King's seal," which made the document uncontestable). They are not legal rules that apply to or target only arbitration clauses or derive their particular meaning from the fact that an arbitration agreement is at issue. Although we do not decide the compensation terms between the parties, we conclude that our application of the parol evidence rule and its rules regarding integrated agreements are generally applicable contract principles and do not require us to conclude that the 2009 agreement supersedes the 2008 agreement's compensation terms, whatever they may be, merely because we conclude that the 2009 agreement is in conflict with and supersedes the 2008 arbitration clause.

In sum, we reject each of defendants' arguments and conclude that the trial court did not err when it denied defendants' petition to arbitrate this dispute.

Affirmed.