250 P.3d 926 (2011)
241 Or. App. 65
CITIGROUP SMITH BARNEY, Plaintiff-Appellant,
v.
Clay HENDERSON, an individual; Doby Woodley, an individual; Corey Henderson, an individual; and Madge Henderson, an individual, Defendants-Respondents.
CV07120045; A139707.
Court of Appeals of Oregon.
Argued and Submitted April 9, 2010.
Decided February 23, 2011.
*928 Bruce L. Campbell, Portland, argued the cause for appellant. With him on the briefs were Miller Nash LLP, and Elisa J. Dozono.
Andrew T. Reilly, Portland, argued the cause for respondents Clay Henderson, Doby Woodley, and Corey Henderson. With him on the brief was Black Helterline LLP.
J. Kevin Shuba argued the cause and filed the briefs for respondent Madge Henderson.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
WOLLHEIM, J.
This is an interlocutory appeal of an order denying plaintiff's motion to compel arbitration. The trial court concluded that defendants' counterclaims were not subject to mandatory arbitration. We agree with plaintiff that the court erred in denying the motion, and we therefore reverse and remand.
The relevant facts are not disputed. Lyle Henderson opened an individual retirement account (IRA) with plaintiff, Citigroup Smith Barney. At the same time, Henderson entered into an IRA agreement with plaintiff that required arbitration of all claims and controversies between them:
"I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and [plaintiff] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with [plaintiff] individually or jointly with others in any capacity; (ii) any transaction involving [plaintiff] or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of [plaintiff] or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which [plaintiff] is a member."
Immediately following the arbitration clause is a choice of law provision selecting New York law to govern and construe the IRA agreement.
Sometime later, Henderson completed two forms to designate beneficiaries of the IRA. One form designates his personal trust as the beneficiary of the IRA. Henderson's second wife, Madge Henderson, is the successor trustee to the personal trust. The second form, which is not dated, designates the children of Henderson's first marriage as beneficiaries of that same IRA. After Henderson died, plaintiff discovered the conflicting forms. Accordingly, plaintiff sent a letter to Madge and the children, stating that it had received two IRA beneficiary forms, it could not determine which form superseded the other, and "[a]s a result, we are not in a position to determine who has the better claim to the [IRA]. As a consequence, we recommend and encourage you to attempt to resolve this yourselves or through mediation, arbitration, or the probate court." Further, plaintiff advised Madge and the children that if they were unable to resolve their competing claims to the IRA, plaintiff "will be inclined to file an action to determine the rightful owner of the [IRA]."
Madge and the children did not resolve their competing claims to the IRA, and plaintiff filed an interpleader action. It alleged that it was subject to competing claims to the IRA, moved to deposit the proceeds of the IRA with the court, and moved to obtain an order relieving it of any further liability for the IRA. Madge objected to plaintiff's motion to be dismissed from the interpleader action, *929 arguing that she intended to file a counterclaim against plaintiff and dismissal could affect that counterclaim. The trial court granted plaintiff's motion to interplead the IRA funds but denied its motion to be dismissed. Further, the court ordered that "defendants must interplead and litigate any claims in this action."
Madge filed an answer and counterclaim, alleging that plaintiff breached fiduciary duties that it owed to Henderson in accepting two contradictory beneficiary designations. Similarly, the children filed an answer and counterclaim alleging that plaintiff breached its contract with Henderson by failing to manage Henderson's file and that the children were intended beneficiaries of the contract between plaintiff and Henderson.
After the children filed their answer and counterclaim, plaintiff filed a motion to compel arbitration of the counterclaims brought by defendants. Plaintiff contended that the counterclaims were subject to the arbitration clause in the IRA agreement. In response, Madge argued that the arbitration clause required arbitration of all claims, including plaintiff's interpleader action, and therefore plaintiff waived its right to arbitrate by filing the interpleader action. For their part, the children adopted Madge's waiver argument but also argued that they could not be compelled to arbitrate because theyunlike Hendersonnever agreed to arbitrate with plaintiff. The trial court denied plaintiff's motion to compel arbitration.
Plaintiff assigns error to the trial court's denial of its motion to compel arbitration. It argues that Henderson agreed to arbitrate as part of the IRA agreement; that all defendants, by claiming to be third-party beneficiaries of the IRA agreement, are subject to the arbitration clause; and that plaintiff did not waive its right to arbitrate by filing an interpleader action. Madge and the children renew the arguments that they made to the trial court. We review the trial court's denial of plaintiff's motion to compel arbitration for errors of law, see The Hays Group, Inc. v. Biege, 222 Or.App. 347, 350, 193 P.3d 1028 (2008) (so reviewing), and reverse and remand.
We begin by determining which law applies. Section 2 of the Federal Arbitration Act (FAA), 9 USC sections 1 to 16, provides:
"A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
That section creates a federal substantive law of arbitrability that not only declares "`a national policy favoring arbitration,' but actually `withdrew the power of the states to require a judicial forum for resolution of claims which the contracting parties agreed to resolve by arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). That expansive reach of the FAA, however, does not "negate an agreement between contracting parties to apply a particular state's substantive contract law to their dispute or a state's procedural rules to their arbitration hearing." Industra/Matrix Joint Venture v. Pope & Talbot, 341 Or. 321, 330, 142 P.3d 1044 (2006). That is because arbitration under the FAA "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." Volt Info. Sciences v. Leland Stanford Jr. U., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Thus, a contractual provision selecting a particular state's law to govern the parties' agreement is valid, so long as it does not "undermine the goals and policies of the FAA." Id. at 478, 109 S.Ct. 1248; see also Industra/Matrix Joint Venture, 341 Or. at 330, 142 P.3d 1044 (describing Volt Info. Sciences).
Here, the parties agree that the IRA agreement involves interstate commerce. We concur. Plaintiff has a multistate nature and maintained securities for Henderson, and the parties agreed to apply the law of another stateNew Yorkto their agreement. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 282, 115 S.Ct. 834, 130 L.Ed.2d *930 753 (1995) (FAA applied to agreement between a corporation with a multistate nature and aspects of the agreement required efforts from different states).
Next, we consider whether the children, as third-party beneficiaries, are bound by the arbitration clause in the IRA agreement. To determine whether parties agreed to arbitrate a certain matter, we apply "ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Accordingly, state law governs the question of whether the arbitration provision in the account agreement is binding on the children as third-party beneficiaries to the account agreement. See Arthur Andersen LLP v. Carlisle, 556 U.S. ___, ___, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009) (directing courts to apply state contract law to determine whether a third-party beneficiary theory is applicable to bind a party to an arbitration agreement); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (describing the question of "whether the parties have submitted a particular dispute to arbitration" as a dispute for courts to decide); Mastrobuono, 514 U.S. at 58, 115 S.Ct. 1212 (whether the parties agreed to include claims for punitive damages within their arbitration agreement is a question of contract interpretation).
As to the state law governing our interpretation of the account agreement, the parties agree that Henderson and plaintiff validly chose New York law to govern the IRA agreement. New York law establishes that a third-party beneficiary is bound by an arbitration clause contained in the contract from which the third party benefits. It is well established under New York law that a party who has not signed an agreement containing an arbitration clause can be compelled to arbitrate if the party has derived a benefit from the contract or relied upon the contract in asserting a claim. See, e.g., God's Battalion of Prayer v. Miele Assocs., 6 N.Y.3d 371, 374, 812 N.Y.S.2d 435, 845 N.E.2d 1265 (2006) (compelling arbitration even though the plaintiff had not signed the arbitration provision, because the plaintiff's "complaint allege[d] that [the defendant] breached their agreement thereby acknowledging and relying on the very agreement that contains the arbitration clause it seeks to disclaim"). New York courts have extended that rule to third-party beneficiaries when the contract from which the third-party benefits contains an arbitration clause. See Williams v. Progressive Northeastern Ins. Co., 839 N.Y.S.2d 381, 382, 41 A.D.3d 1244, appeal den., 9 N.Y.3d 808, 843 N.Y.S.2d 537, 875 N.E.2d 30 (2007) (compelling a third-party beneficiary's claims to arbitration because a third-party beneficiary "is entitled only to those rights which the original parties to the contract intended the third party to have"); HRH Constr. LLC v. Metro. Transp. Auth., 823 N.Y.S.2d 140, 141-42, 33 A.D.3d 568 (2006) (corporation estopped from avoiding arbitration agreement in contract under which the corporation acquired assets as a beneficiary).
The children do not dispute that their counterclaim for breach of contract would fall within the arbitration clause had it been brought by Henderson. Thus, the children essentially contend that they may enjoy all of the benefits of Henderson's contract without being bound by the arbitration clause. In that light, the children's argument runs up against well-established New York law that a party who accepts a benefit from a contract cannot avoid an arbitration clause contained in that contract even when the party is not a signatory to the arbitration clause. Accordingly, we conclude that the children's claims are subject to the arbitration clause.
We next consider whether the trial court correctly denied plaintiff's motion to compel arbitration because plaintiff waived its right to arbitrate. Plaintiff and Madge frame the waiver issue in accordance with Wilbur-Ellis Co. v. Hawkins, 155 Or.App. 554, 558, 964 P.2d 291 (1998), a case in which we listed the elements that must be proved by a party in order to establish waiver of the right to arbitrate. The issue in this case, however, is who should decide the waiver issue, not how the issue should be resolved. As to that question of forum, the children argue that the choice of law provision mandates that *931 New York law applies, which, according to the children, selects a court rather than an arbitrator to decide whether the right to arbitrate has been waived.[1]
Under the FAA, the issue of which forum should decide a question is generally a matter of contract interpretation, which is conducted in accordance with state law. First Options of Chicago, Inc., 514 U.S. at 944, 948, 115 S.Ct. 1920. Parties are free to agree to apply "a particular state's substantive contract law to their dispute or a state's procedural rules to their arbitration hearing." Industra/Matrix Joint Venture, 341 Or. at 330, 142 P.3d 1044. But, where the arbitration agreement is silent as to whether the court or the arbitrator should decide issues of waiver, the FAA supplies a default rule: It is presumed that waiver issues are to be decided by the arbitrator. Howsam, 537 U.S. at 84, 123 S.Ct. 588.
In Howsam, the parties chose to arbitrate their dispute before the National Association of Securities Dealers (NASD). After the plaintiff submitted a claim with the NASD, the defendant filed an action in federal district court, arguing that the plaintiff's claim was barred by the NASD time limit for bringing a claim. The parties disputed whether the NASDthat is, the arbitrator or the court should decide the time-limit issue. Id. at 82, 123 S.Ct. 588. The district court had concluded that the arbitrator, and not the court, should decide the waiver issue. On appeal, the Tenth Circuit reversed after it concluded that issues of waiver present questions about whether the underlying case could be arbitrated and are therefore issues for the court to decide. Id.
The United States Supreme Court granted certiorari to resolve a conflict in the federal circuits as to which foruma court or an arbitratorshould resolve the issue of whether a party waived its right to arbitrate. Id. at 82-83, 123 S.Ct. 588. It resolved the issue by identifying two distinct types of questions. On the one hand, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the `question of arbitrability,'" is presumptively "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Id. at 83, 123 S.Ct. 588 (quotations and brackets omitted). But, on the other hand, it is presumed that an arbitrator will decide "procedural questions which grow out of the dispute and bear on its final disposition." Id. at 84, 123 S.Ct. 588 (quotations and citations omitted). The Court listed examples of procedural questions: "allegations of waiver, delay, or a like defense to arbitrability." Id. (quotations and citation omitted; emphasis in original). Accordingly, the Court concluded that "the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge." Id. at 85, 123 S.Ct. 588; see also Industra/Matrix Joint Venture, 341 Or. at 336-37, 142 P.3d 1044 (holding that, under the FAA, procedural questions are "`presumptively not for the judge, but for an arbitrator, to decide'" (quoting Howsam, 537 U.S. at 84, 123 S.Ct. 588 (emphasis in Howsam))). Thus, after we decided Wilbur-Ellis Co., Howsam added an analytical layer to the waiver issue. Wilbur-Ellis Co. describes the elements that a party must prove to establish waiver of the right to arbitrate. But, before we reach that issue, we must first apply the analysis prescribed by Howsam to determine which forum decides whether a party has waived its right to arbitrate.
Under Howsam, our path for determining which forum should decide the waiver issue involves a single question: Whether the arbitration clause demonstrates the parties' intent to select a particular forum to resolve the waiver issue. If we cannot discern the parties' intent, then we apply the default presumption that the parties intended an *932 arbitrator to decide procedural issues such as waiver.
The children argue that the partiesHenderson and plaintiffintended to select the New York rule that the court decides issues of waiver. The children reason that the IRA agreement selects New York law to govern its construction and conclude that, under that law, courts decide issues of waiver. That argument, however, does not account for the distinction in New York law between construction of provisions in an agreement and the enforcement of those provisions.
The choice of law provision in the IRA agreement provides that "this agreement and all the terms herein shall be governed and construed in accordance with the laws of the State of New York." However, when the FAA applies to an arbitration agreement, New York courts distinguish choice of law provisions that select New York law with respect to the enforcement of the contract from provisions that select New York law to govern the contract. The New York Court of Appeals has explained the difference this way:
"Undeniably, in the absence of an explicit choice of law provision, governing Federal law would have precluded the courts in the appeals before us from addressing the Statute of Limitations issue * * * or from issuing stays under our arbitration act * * *. However, the parties' choice that New York law would govern `the agreement and its enforcement' (emphasis added) indicates their `intention to arbitrate to the extent allowed by [this State's] law,' even if application of the State lawand an adverse ruling on a Statute of Limitations claimwould relieve the parties of their responsibility under the contract to arbitrate. * * * Although the parties broadly agreed to arbitrate `any controversy' arising from the customer agreements, that clauselike all other provisions in the contractwas subject to the parties' additional qualification that New York State law provides the basis of decision for questions concerning not only the agreement, but more critically, its enforcement. Accordingly, we conclude that under this agreement the parties agreed to refer questions of timeliness to the courts by incorporating New York law. In other words, when the parties chose to apply New York law, without excluding its arbitration rules from that general condition * * *, the parties adopted as binding New York's rule that threshold Statute of Limitations questions are for the courts."
Smith Barney, etc. v. Luckie, 85 N.Y.2d 193, 202, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995) (citations omitted; emphasis in original).
By contrast, the New York Court of Appeals has held that a choice of law provision requiring that "the Contract shall be governed" by New York law did not express an agreement to have New York law govern the agreement's enforcement, and the procedural issue of timeliness was therefore for the arbitrator to decide. Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005). The court reached that conclusion because critical text-text expressly requiring New York law to govern the enforcement of the agreement-was missing. The court explained that a choice of law provision selecting New York law to govern both "the agreement and its enforcement" would have adopted "New York's rule that threshold Statute of Limitations questions are for the courts." Id. (Emphasis in original.) Because the critical language"and its enforcement"was missing from the agreement at issue, the court concluded that "all controversies, including issues of timeliness, are subjects for arbitration." Id. (citations omitted). Moreover, at least one New York court has applied the presumption of arbitrability to the specific question at issue here: waiver. All Metro Health Care Servs., Inc. v. Edwards, 884 N.Y.S.2d 648, 653, 25 Misc.3d 863 (2009) (rejecting the defendant's argument that New York courts decide waiver issue because the defendant "ignores the substantial authority under the FAA which holds that where the parties have not provided for New York law to govern the enforcement of their agreement, it is for the arbitrator to decide whether allegations of waiver or delay constitute a defense to arbitrability" *933 (citing Diamond Waterproofing Sys., Inc., 4 N.Y.3d at 252, 793 N.Y.S.2d 831, 826 N.E.2d 802)).
Here, the IRA agreement provides that it "shall be governed and construed in accordance with the laws of the State of New York." The text of the agreement does not include the critical text that it shall be enforced in accordance with New York law. Although, unlike in Diamond Waterproofing Sys., Inc., the agreement contains the additional term requiring the agreement to be "construed" in accordance with New York State law, "construed" does not mean "enforced." Accordingly, we are not persuaded by the children's argument that the IRA agreement demonstrates the parties' intent to adopt a New York rule that courts decide issues of waiver.
Rather, the IRA agreement is silent as to which forum should decide issues of waiver of the arbitration agreement. In light of that silence, we apply the presumption that waiver is an issue of procedural arbitrability that is for the arbitrator, and not the court, to decide. Howsam, 537 U.S. at 84, 123 S.Ct. 588. Thus, the arbitrator must decide the waiver issue raised by Madge and the children. But, we hasten to add, our holding on this issue is limited to the conclusion that the waiver issue must go to the arbitrator rather than the court. In so holding, we express no opinion on the merits of the parties' arguments. See Industra/Matrix Joint Venture, 341 Or. at 337 n. 6, 142 P.3d 1044 (making the same clarification).
In sum, as third-party beneficiaries, the children's rights under the account agreement are subject to the same limitations as Henderson's. Therefore, the children are bound by the arbitration clause contained in the account agreement. And, because waiver is an issue of procedural arbitrability, we leave to the arbitrator the question of whether plaintiff waived its right to arbitrate.
Reversed and remanded with instructions to grant plaintiff's motion to compel arbitration.
NOTES
[1] Prior to oral argument, we decided Livingston v. Metropolitan Pediatrics, LLC, 234 Or.App. 137, 227 P.3d 796 (2010). In that case, we concluded that waiver of arbitrability is an issue for the arbitrator, and not the court, to decide under the Oregon Uniform Arbitration Act, ORS 36.600 to 36.740 (OUAA).

In light of that recent decision, the parties sought leave to file additional briefing that addressed Livingston. We granted their request. However, Livingston interprets the OUAA and therefore does not guide the analysis of the issue in this case, which is whether the FAA mandates arbitration of the waiver issue.