Argued and submitted May 20, 2015, affirmed August 31, 2016

STONECREST PROPERTIES, LLC,
*Plaintiff-Appellant,*

*v.*

CITY OF EUGENE;
Eugene Water & Electric Board; and
The Real Estate Development Group, LLC,
*Defendants,*

*and*

DEVELOPERS SURETY
AND INDEMNITY COMPANY,
*Defendant-Respondent.*

Lane County Circuit Court
161211098; A156010

382 P3d 539

Karsten H. Rasmussen, Judge.

Charles R. Markley argued the cause for appellant. With him on the briefs were Sanford R. Landress and Green & Markley, P.C.

Thomas M. Christ argued the cause for respondent. With him on the brief were Julie A. Smith and Cosgrave Vergeer

Kester, LLP, and Jonathan W. Monson and Cable Huston LLP.

Before Ortega, Presiding Judge, and Garrett, Judge, and Haselton, Senior Judge.

## GARRETT, J.

This is the second of two cases decided this date arising out of the unfinished Moon Mountain housing development in the City of Eugene. At issue is an agreement entered into by the original developer and the city to make certain improvements to the subdivision, along with a corresponding performance bond issued by defendant Developers Surety and Indemnity Company (DSIC) to ensure performance under that agreement. The main point of contention in this case is whether a successive developer, plaintiff Stonecrest Properties, LLC, has standing as a third-party beneficiary to enforce the bond against DSIC. For the reasons that follow, we conclude that Stonecrest is, at most, an incidental beneficiary and, therefore, lacks standing to enforce the bond. Accordingly, we affirm.

In light of the extensive background discussion in *LDS Development, LLC v. City of Eugene (A158294)*, 280 Or App 611, 382 P3d 576 (2016), we restate the facts only to the extent necessary to aid in the resolution of this appeal. In 2007, the city entered into a development agreement with the Real Estate Development Group, LLC (REDG), the original Moon Mountain developer, in which REDG promised to make certain public infrastructure improvements to the property in exchange for development approval from the city. In accordance with the Eugene Code (EC),[1] the agreement obligated REDG to post a bond in an amount sufficient to cover the estimated costs of installing the improvements. The development agreement states that "[t]here is no intent on the City's part to bestow a benefit on individual third parties but rather to protect the public interest by obtaining compliance with the laws, ordinances, resolutions, rules, and regulations governing the development of real property within the city." The agreement also provides that, in the event of a breach, "the City, within its sole and unfettered discretion, may determine to seek damages from [REDG] for the breach." Finally, the development agreement includes a provision for an award of attorney fees to the prevailing party in any suit or action brought upon the agreement.

---

[1] EC 7.145 provides that, prior to commencing construction of any public improvement, an individual must "file with the city engineer a * * * bond in an amount equal to the estimated cost of the improvement."

REDG obtained a bond from DSIC in the amount of $1,063,880 to secure its obligations under the development agreement. The bond listed REDG as principal, DSIC as surety, and the city as obligee, and provided that it would become "void" if REDG installed the improvements as specified in the agreement. Otherwise, the bond would "remain in full force and effect" and DSIC would be "held and firmly bound unto the City of Eugene as [o]bligee."

Due to financial difficulties, REDG failed to perform its obligations under the development agreement and transferred its interest in the subdivision to Umpqua Bank by a deed in lieu of foreclosure. Stonecrest acquired the subdivision from the bank and filed the underlying action alleging a number of claims against multiple entities, including DSIC. Two of those claims are pertinent to this appeal.

As part of its first claim for relief, Stonecrest sought a declaratory judgment against the city that, under various statutes, regulations, and the development agreement, the city was obligated to either enforce the bond against DSIC or construct the unfinished improvements itself.

In its fifth claim for relief, Stonecrest sought a declaration that the bond issued by DSIC is "valid and effective" and that Stonecrest is entitled to enforce the bond to complete the unfinished improvements. Relying on *Vale Dean Canyon Homeowners Assoc. v. Dean*, 100 Or App 158, 785 P2d 772 (1990), Stonecrest asserted that it had standing to enforce the development agreement and bond as a third-party beneficiary. DSIC responded that Stonecrest lacked standing to enforce the bond as a third-party beneficiary or, alternatively, that the duty to make the improvements is a covenant that runs with the land, which passed to Stonecrest when it acquired the property. DSIC also asserted two counterclaims against Stonecrest; one for a declaration that DSIC had no obligation to Stonecrest under the bond, and another for attorney fees under ORS 742.061(1).[2]

---

[2] ORS 742.061(1) provides, in part:

"If the action is brought upon the bond of a contractor or subcontractor executed and delivered as provided in ORS 279B.055, 279B.060, 279C.380 or 701.430 and the plaintiff's recovery does not exceed the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the

The parties cross-moved for partial summary judgment on Stonecrest's fifth claim for relief. DSIC also moved for summary judgment on its counterclaims. The trial court ruled in DSIC's favor on all, explaining:

> "The Bond in this case is a mechanism issued by a separate entity to assure performance by REDG. The Bond is a contract which has neither reach nor impact beyond the parties to the Bond agreement: the City, REDG, and DSIC. It is separate and distinct from the agreement between REDG and the City, which is the agreement that actually concerns the public improvements Stonecrest claims it was intended to benefit from. * * * In this case, DSIC was bound only to the City as an obligee. Granting standing to Stonecrest would subject DSIC to the unforeseen liability of paying a Bond that its only obligee, the City, has not enforced. *Vale Dean Canyon* may give Stonecrest third-party standing with regard to a possible breach of the Agreement, but does not require DSIC to pay out the Bond principal.

> "The Court does not reach the other issue raised by DSIC in its motion of who, at this juncture, retains the obligation to complete the improvements because the issue of standing is dispositive."

DSIC also moved for summary judgment on Stonecrest's first claim for relief—a claim that, as noted above, Stonecrest made against the city, not DSIC. DSIC argued that, although it was not named in that claim, it was nevertheless entitled to summary judgment because the claim was partially premised on arguments raised in Stonecrest's *fifth* claim for relief against it. Noting the unusual posture of DSIC's motion, the trial court granted summary judgment on Stonecrest's first claim to the extent that it "implicated" DSIC:

> "DSIC fails to present authority indicating that any party other than the party against whom a claim is asserted may seek summary judgment [under ORCP 47 B]. The Court therefore sees no reason to dismiss Stonecrest's first claim in its entirety.

> "However, Stonecrest's first claim for relief presents a compound declaration, which, in part, clearly implicates DSIC's

---

court as attorney fees shall be taxed and allowed to the defendant as part of the costs of the action and any appeal thereon."

rights and obligations regarding the bond. In particular, Stonecrest asks for a declaration which states that (1) "the City is in breach of its duties" under the law and under the development agreement, (2) the City must complete the improvements, and (3) that the City must enforce the Bond. * * * This third point is, in effect, another claim against DSIC requiring them to pay out the Bond principal.

"* * * Accordingly, DSIC is entitled to summary judgment as to the first claim to the extent that DSIC is implicated in the declaration sought in that claim. DSIC's cross motion for partial summary judgment on Stonecrest's first claim is GRANTED only to the extent that the first claim seeks a declaration that establishes the validity of the bond or seeks its enforcement against DSIC. The first claim remains as alleged against the remaining defendants vis-à-vis the obligation, if any, of the City to complete the improvements."

After additional briefing and argument regarding attorney fees, the court entered a limited judgment and money award against Stonecrest, awarding DSIC $130,746.06 in attorney fees.

On appeal, Stonecrest raises several interrelated assignments of error. First, Stonecrest challenges the trial court's rulings with respect to its fifth claim for relief. Stonecrest contends that the trial court erred when it concluded that the bond is "separate and distinct" from the development agreement that it secures. According to Stonecrest, that error is significant because Stonecrest is a third-party donee beneficiary under the development agreement and, because the development agreement and the bond must be construed as one, Stonecrest therefore has standing to enforce the bond. Stonecrest relies on *Vale Dean Canyon*, where we held that a group of homeowners had standing to enforce an agreement entered into by the developer and county after the developer failed to construct the improvements guaranteed by that agreement. 100 Or App at 162-63.

Stonecrest also assigns error to the trial court's grant of DSIC's motion for summary judgment as to Stonecrest's first claim of relief against the city. Stonecrest points out that DSIC was not named in that claim, and that, under ORCP 47 B, only a "party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment

is sought" may seek summary judgment. Finally, Stonecrest assigns error to the trial court's award of attorney fees to DSIC under ORS 742.061(1). Stonecrest argues both that DSIC was not entitled to fees under that statute, and that the fees awarded were unreasonably high.

In reviewing a trial court's grant of summary judgment, "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to * * * the party opposing the motion." *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C.

We first address the issues regarding Stonecrest's fifth claim for relief. As an initial matter, we note that DSIC does not rely on the trial court's reasoning that the bond is "separate and distinct" from the development agreement. Rather, DSIC and Stonecrest both proceed from the premise that the development agreement was incorporated into the bond and that the two must be construed as one—a position supported by our case law. *See Biomass One, L.P. v. S-P Construction (A61560)*, 103 Or App 521, 528-29, 799 P2d 152 (1990) (where "the contract and the description of its subject-matter are sufficient to identify the agreement, * * * the contract is incorporated into the bond" and "the surety's liability is determined by construing the bond and the contract together"). Accordingly, for purposes of our review, we view the two documents together and consider whether the trial court erred in ruling that Stonecrest lacks enforcement rights as a third-party beneficiary.[3] We conclude that the trial court did not err.

Our resolution of the third-party beneficiary issue is guided by contract principles. Oregon law recognizes three

---

[3] We may affirm the trial court's decision under the "right for wrong reason" doctrine if the decision is correct for a reason other than that upon which the trial court relied and the evidentiary record is sufficient to support the alternative basis for affirmance. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Given that both parties have consistently argued that the development agreement and bond must be construed together, we are persuaded that the evidentiary record is sufficiently developed to permit us to apply that doctrine in this case.

types of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *Sisters of St. Joseph v. Russell*, 318 Or 370, 374-75, 867 P2d 1377 (1994). Donee and creditor beneficiaries "are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract." *Id.* at 375. An incidental beneficiary has no right of enforcement. *Id.* ("[I]f the third party has paid no value *and* there is no intention to confer a contract right on that party, then the party is an incidental beneficiary who is not entitled to an action on the contract." (Emphasis in original.)).

Stonecrest asserts that it is a donee beneficiary. A person is a donee beneficiary if, under the circumstances, it appears from the terms of the contract that the purpose of the promisee in obtaining the promise is "to make a gift to the beneficiary or to confer upon him a right against the promisor." *Restatement (First) of Contracts* § 133 (1932); *Lord v. Parisi*, 172 Or App 271, 277-78, 19 P3d 358, *rev den*, 332 Or 250 (2001). Generally, we look to the intent of the parties to the contract in determining whether a nonparty is more than an incidental beneficiary. *Lord*, 172 Or App at 278.

Stonecrest fails to point to anything in the record that would suggest that the purpose of the development agreement or bond was to confer a "gift" or some "right" on any conditional third party. The development agreement expressly disclaims any such intention. *See Couch Investments, LLC v. Peverieri*, 359 Or 125, 371 P3d 1202 (2016) ("Oregon contract principles require that a court look to the text and context of the parties' agreement to determine the parties' intent."). The agreement provides, *"There is no intent on the City's part to bestow a benefit on individual third parties* but rather to protect the public interest by obtaining compliance with the laws, ordinances, resolutions, rules, and regulations governing the development of real property within the city." (Emphasis added.) Similarly, the bond agreement lists only the city as obligee. Although expressly naming a third party as a beneficiary is not required to confer third-party beneficiary status, the failure to do so may serve as "an indication that the promisee did not intend to confer a right upon it." *Northwest Airlines v.*

*Crosetti Bros.*, 258 Or 340, 346-47, 483 P2d 70 (1971). The failure to do so here, in conjunction with the development agreement's express disclaimer of any intent to create third-party rights, is decisive.[4]

Stonecrest nevertheless contends that *Vale Dean Canyon* is controlling and establishes that Stonecrest has standing to enforce the development agreement, and therefore, the bond that incorporates that agreement. In that case, the developer of a subdivision entered into an agreement with the county to construct certain improvements to a private road. To assure the performance of its obligations, the developer made an irrevocable assignment of a certificate of deposit for $5,000 to the county. 100 Or App at 160. In the event that the developer failed to construct the improvements, the agreement required the county to use the $5,000 to complete them. *Id.* After the developer failed to perform under the agreement, purchasers of lots within the subdivision formed a homeowner's association and petitioned the county to construct the improvements. *Id.* at 160-61. The county did so and assessed each homeowner a share of the cost. The homeowners then brought an action against the developer to recover those costs, and the trial court entered summary judgment in favor of the homeowners. *Id.* at 161.

We affirmed, concluding that the homeowners were third-party donee beneficiaries of the contract between the

---

[4] We note that our view is consistent with cases in other jurisdictions that have considered third-party beneficiary status under similar performance bonds. *See, e.g., City of Yorkville ex rel. Aurora Blacktop Inc. v. American Southern Ins. Co.,* 654 F3d 713, 718 (7th Cir 2011) (subcontractor could not sue surety as a third-party beneficiary under subdivision performance bonds because the bonds did not contain "any language suggesting that [the developer's] obligation runs to anyone other than the City of Yorkville," but instead state "that they are 'for the purpose of guaranteeing the installation' of various public improvements"); *Hewson Constr., Inc. v. Reintree Corp.,* 101 Wash 2d 819, 826-27, 685 P2d 1062, 1066 (1984) ("Our conclusion that [the developer's] statutory performance bond does not benefit [the third-party contractor] is in accord with the interpretation of similar statutes by courts of other jurisdictions. These courts and commentators have noted that plat improvement bonds run solely to the obligee-municipality." (Internal citations omitted.)); *Norton v. First Fed. Savings,* 128 Ariz 176, 178, 624 P2d 854, 856 (1981) (Owners of lots in subdivision could not sue surety on performance bond for seller's failure to complete off-site improvements because "nothing in any contract between [the surety] and [the seller] *** demonstrates an intention to benefit them. Nor does any intent to benefit [the lot owners] appear in the terms of the bond.").

county and the developer. We asked whether, in light of the surrounding circumstances, the agreement manifested an intention that the developer be liable to the homeowners for nonperformance. *Id.* at 161-62. We answered that it did, reasoning that the agreement was "clearly made for [the homeowners] benefit." *Id.* at 162-63. Significantly, the agreement *required* the county to complete the improvements if the developer did not. In addition, permitting the homeowners to recover under the agreement did not subject the developer to any unforeseen liability, "but only to the burden of his promised performance." *Id.* at 162.

Contrary to what Stonecrest appears to argue, *Vale Dean Canyon* did not hold that development agreements between property developers and local governments create enforceable third-party rights in the individual property owners as a matter of law. Unlike in *Vale Dean Canyon*, the development agreement here explicitly disclaims any intention to benefit third parties and asserts that the city's purpose in making the agreement is the protection of "the public interest." Also, unlike *Vale Dean Canyon*, the agreement imposes no obligation on the city to complete the work if the developer fails to do it; rather, the city has "sole and unfettered discretion" to enforce the agreement.

To be sure, Stonecrest stands to benefit from the completion of REDG's unfulfilled obligations under the development agreement. But that is insufficient to confer onto Stonecrest the right to enforce the agreement or the bond. Accordingly, the trial court did not err in granting summary judgment in favor of DSIC on the fifth claim for relief.

We next turn to Stonecrest's first claim for relief. Again, that claim sought a declaration that, under various statutes and regulations and the development agreement, the city was required to either enforce the bond against DSIC or complete the infrastructure improvements itself. On appeal, Stonecrest contends that the trial court erred when it granted summary judgment to DSIC because DSIC was not named in that claim. *See* ORCP 47 B ("A party *against whom* a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move,

with or without supporting affidavits or declarations, for a summary judgment in that party's favor as to all or any part thereof." (Emphasis added.)). We conclude that Stonecrest's assignment of error is now moot.

After filing the notice of appeal in this case, Stonecrest sold its interests in Moon Mountain to a third developer, LDS, which was then substituted as plaintiff in the ongoing proceedings against the city at the trial court level.[5] The city also moved for summary judgment on the first claim for relief, denying that it had any legal or contractual obligation to complete the improvements specified in the development agreement. The trial court granted the city's motion for summary judgment, and LDS appealed. That appeal is the subject of our decision today in *LDS Development, LLC (A158294)*. In that case, we held that the city has no "contractual or statutory obligation to construct the infrastructure improvements at issue" or to call in the bond. 280 Or App at 614. Accordingly, we affirmed the trial court's grant of summary judgment in favor of the city on LDS's—previously Stonecrest's—first claim for relief.[6]

In light of the foregoing, we conclude that Stonecrest's third assignment of error in this case is now moot. *See Leupold & Stevens, Inc. v. City of Beaverton*, 206 Or App 368, 374, 138 P3d 23 (2006) ("A case becomes 'moot' when there is no longer * * * a substantial controversy; that is, the court's exercise of authority would no longer have some practical effect on the rights of the parties to the controversy." (Citations omitted.)); *see also Thunderbird Hotels, LLC v. City of Portland*, 218 Or App 548, 557, 180 P3d 87 (2008) ("[O]rdinarily, when one of several issues on judicial review is moot, that fact will not divest this court of jurisdiction to consider other issues in the case."). That is so because, even if we agree with Stonecrest that the trial court erred when it granted DSIC's motion for summary judgment on

---

[5] We note that Stonecrest's sale of the property does not moot this appeal because the trial court's dismissal of Stonecrest's claims below was the predicate for the award of attorney fees in favor of DSIC.

[6] We remanded the case based on our conclusion that the trial court erred in granting the city's motion for summary judgment on its two counterclaims, neither of which is pertinent to this appeal. *LDS Development, LLC (A158294)*, 280 Or App at 623.

the first claim for relief, such a decision would have no practical effect on the parties' rights. The premise of Stonecrest's appeal is that, if we reverse and LDS's separate appeal also succeeds, "the first claim for relief will proceed further and could result in a judgment favorable to Stonecrest and [LDS]." Thus, according to Stonecrest, the trial court's purported error in ruling for DSIC on the first claim for relief matters because of the *possibility* of a successful result for LDS in the other case. In light of our decision this date in *LDS Development, LLC (A158294)*, that contingency no longer exists. We perceive no other reason why a reversal as to the first claim for relief would have any practical effect on the parties' legal rights. Accordingly, the third assignment of error is moot.

In its final assignment of error, Stonecrest challenges the trial court's award of attorney fees in the amount of $130,746.06 under ORS 742.061(1). That statute provides, in part:

> "If the action is brought *upon the bond* of a contractor or subcontractor * * * and the plaintiff's recovery does not exceed the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed and allowed to the defendant as part of the costs of the action and any appeal thereon."

(Emphasis added.) Before us, Stonecrest contends that DSIC was not entitled to fees under that statute because a declaratory judgment action is not an action "upon the bond." Stonecrest acknowledges that the parties' briefing and oral arguments below focused solely on the *reasonableness* of DSIC's requested attorney fees. Nevertheless, Stonecrest maintains that it preserved the issue of DSIC's *entitlement* to fees through its reply to DSIC's counterclaims, which denied the allegations contained therein.[7]

We disagree. Although Stonecrest's reply to the counterclaim for attorney fees contained a stock phrase

---

[7] Stonecrest cites ORAP 5.45(1) for the proposition that an appellate court "may consider an error of law apparent on the record," but does not otherwise request that we engage in plain error review. Rather, Stonecrest maintains that its challenge to DSIC's entitlement to attorney fees was adequately preserved for appeal.

denying "each and every other allegation \* \* \* except as expressly admitted herein," Stonecrest's later statements to the trial court made it clear that Stonecrest was challenging only the reasonableness of DSIC's fee request, not the entitlement to fees. In fact, Stonecrest's written objection to DSIC's fee request specifically represented that Stonecrest "does not dispute DSIC's entitlement to fees and costs. [Stonecrest] does however, object to fees and costs that are plainly excessive and, therefore, unreasonable." The trial court's opinion and order similarly makes it clear that the trial court understood Stonecrest to be challenging only the reasonableness of the fee request. Stonecrest thus failed to preserve any objection to DSIC's *entitlement* to fees for appellate review.

Stonecrest reminds us that "ordinary rules of preservation are somewhat more lax when the case turns on the applicability and construction of a statute." *State v. Smith*, 184 Or App 118, 122, 55 P3d 553 (2002). To that end, Stonecrest argues that it is our duty to identify the correct interpretation of a statute, regardless of whether it is asserted by the parties. *See Gadda v. Gadda*, 341 Or 1, 7, 136 P3d 1099 (2006). Although the principles cited by Stonecrest are generally correct, they do not help Stonecrest. As we explained in *State v. Shepherd*, 236 Or App 157, 163, 236 P3d 738 (2010), the responsibility to correctly interpret a statute arises "only when the parties have put the issue of statutory interpretation before us by disagreeing as to what a statute means." As in that case, Stonecrest's argument fails not because a correct interpretation of ORS 742.061 compels such an outcome, but, rather, because Stonecrest failed to "adequately preserve[] the argument that would have put the meaning of the statute at issue." *Id.*; *see also State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal.").

As to the reasonableness of the fee award, Stonecrest raises a number of different arguments, all of which essentially reduce to the assertion that the amount of time spent by DSIC's attorneys was excessive in comparison to the time spent by Stonecrest's attorneys. Reviewing for an abuse of discretion, *Quick Collect, Inc. v. Higgins*, 258 Or App 234,

242, 308 P3d 1089 (2013), we conclude that the amount awarded was within the range of permissible choices available to the trial court. The parties submitted extensive briefing disputing the reasonableness of DSIC's incurred fees. The trial court also held a hearing during which both parties presented expert testimony. The trial court then issued an opinion and order that applied the factors listed in ORS 20.075(2)[8] and concluded that DSIC was entitled to reasonable attorney fees in the amount of $130,746.06. Having reviewed the record before the trial court, we find no abuse of discretion in the court's fee award.

Affirmed.

---

[8] ORS 20.075(2) provides that, in cases where an award of attorney fees is required by statute, the court must consider the following factors in determining the amount of such an award:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent."