No. 706 August 6, 2025 399

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Antonio CORNELIO,
as Personal Representative of the Estate of
Vickie Marie Pobanz,
*Plaintiff-Respondent,*

*v.*

PREMERE REHAB, LLC,
an Oregon limited liability company, dba Infinity Rehab,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CV48494; A180698

Michelle A. McIver, Judge.

Argued and submitted January 29, 2025.

Michael J. Estok argued the cause and filed the briefs for appellant. Also on the briefs was Lindsay Hart, LLP.

Christopher J. Kuhlman argued the cause and filed the brief for respondent. Also on the brief was Kuhlman Law, LLC.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant Premere Rehab, LLC, dba Infinity Rehab appeals from an interlocutory order denying its motion to compel arbitration. ORS 36.730(1)(a). Plaintiff is the personal representative of the estate of Vickie Pobanz (decedent), who died following complications that arose during her residence at Bend Transitional Care (BTC). Defendant is a separate legal entity that provided therapy services to decedent at BTC. Defendant moved to compel arbitration of plaintiff's wrongful death action against it based on an arbitration agreement that decedent had executed with BTC. The trial court denied that motion. Defendant appeals, raising two assignments of error, arguing that the trial court erred in deciding the issue of arbitrability and in denying arbitration on the merits. For the reasons that follow, we affirm.

The relevant facts are undisputed. In March 2018, decedent was admitted as a resident at BTC to recover from an ankle fracture. Upon her admission, decedent signed an Admission Agreement and an Arbitration Agreement. There is no dispute that decedent had the mental capacity to sign those agreements. A representative of BTC countersigned the agreements for "the Facility." Both agreements were between the Facility and the Resident and both had Bend Transitional Care's name and address printed on the first page. Defendant is not named in either document. The Admission Agreement references a Resident Handbook, which states that the Facility provides various therapy services to its residents. The arbitration agreement provides in relevant part:

> "The Resident and/or Legal Representative and/or Resident Representative, collectively known as the 'Resident Group' and the Facility, on behalf of themselves and all others claiming by, through or under them, agree that they shall submit to binding arbitration all disputes against each other and their respective Legal Representatives, affiliates, governing bodies and employees, arising out of, or in any way connected with, the care provided at this Facility under the terms of the Admission Agreement. ***

> "All such disputes shall be determined by binding arbitration in the county in which the Facility is located, before one arbitrator. The arbitration shall be administered

by JAMS (a private arbitration service) pursuant to its Comprehensive Arbitration Rules and Procedures ＊＊＊."

As relevant to this appeal, JAMS Rule 11(b) (the delegation provision) delegates initial issues of arbitrability to the arbitrator:

"Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

The JAMS Rules do not appear to have been attached to the Arbitration Agreement or provided to decedent.

While at BTC, decedent developed wounds on her hips, which became infected and led to her death in August 2019. In 2020, plaintiff filed a wrongful death and survival action against BTC and other affiliated entities and individuals allegedly involved in the operation, management, and/or ownership of BTC. The defendants in the first lawsuit filed a motion to compel arbitration. The court granted the motion, and the parties accordingly submitted to arbitration.

Plaintiff then filed the complaint commencing this case against defendant, who was not a party in the first lawsuit, alleging that defendant improperly sized decedent for a wheelchair, which led to her hip wounds. Defendant provides therapy and rehab services at BTC, but is a separate legal entity and designated as a "contractor" pursuant to a Therapy Services Agreement between BTC and defendant. Defendant moved to compel arbitration based on the Arbitration Agreement decedent signed upon admission to BTC. It claimed that decedent entered the agreement with "the Facility," and not any specific legal entity. It further claimed that the Arbitration Agreement broadly covered "all disputes" connected with the care provided at the Facility, and therefore plaintiff's claims against it fell within the scope of that agreement.

The trial court issued an order denying defendant's motion to compel arbitration. The court concluded:

"Based on the record, the language of the Arbitration Agreement, and the collective Agreements, all drafted and explained by 'the facility,' the court finds that Premere was not a party to the *** arbitration agreements executed between BTC and [decedent]. The agreements refer to 'the facility,' yet 'the facility' was not defined to include Premere. Furthermore, the Arbitration Agreement did not specifically include BTC's 'contractors.' *** In the case at hand, if the parties intended to make Premere a party to the arbitration agreement, they could have expressed that intent in any number of ways; however, they did not do so.

"No reasonable 'Resident Group' could look at the collective information provided to them and believe they were entering an arbitration agreement with Premere. ***

"Given that the defendant is a non-signor and is not referenced in the Arbitration Agreement, it is a third-party asking the court to extend the arbitration agreement between BTC and decedent to itself. The court finds that there is no adequate basis to extend the reach of the BTC Arbitration Agreement to Premere. *** Plaintiff's claims against Premere are not subject to an arbitration agreement and, therefore, the claims at hand are not subject to mandatory arbitration."

Defendant appeals that order, arguing that the trial court erred both in deciding arbitrability instead of sending that issue to an arbitrator and in denying arbitration on the merits. We review the denial of a motion to compel arbitration for legal error. *Citigroup Smith Barney v. Henderson*, 241 Or App 65, 69, 250 P3d 926 (2011).

Defendant's first assignment of error contends that, pursuant to the clear and unmistakable delegation provision in the Arbitration Agreement, initial arbitrability issues had to be decided by the arbitrator, and therefore the trial court erred in deciding the issue at all. Because the delegation provision provided for arbitration of the issues of formation, existence, and determining the proper parties to the agreement, defendant asserts that plaintiff's opposition to arbitration, on the grounds that defendant was not a party to the agreement, was an issue that should have been decided by an arbitrator. In response, plaintiff asserts that, before deciding who determines arbitrability, the relevant

state statutes require the court to first determine whether a valid arbitration agreement exists. ORS 36.620(2); ORS 36.625. Plaintiff further asserts that, because defendant is not a signatory to the arbitration agreement, there is no valid agreement to arbitrate between decedent and defendant. We first discuss whether the court must determine whether a contract exists before turning to defendant's argument concerning the delegation provision. *Coinbase, Inc. v. Suski*, 602 US 143, 148, 144 S Ct 1186, 218 L Ed 2d 615 (2024) ("[T]he first question in any arbitration dispute must be: What have these parties agreed to?").

Section 2 of the Federal Arbitration Act (FAA) "creates a body of federal substantive law of arbitrability, which applies even in the context of state-law claims brought in state courts." *Lumm v. CC Services, Inc.*, 290 Or App 39, 44, 414 P3d 454 (2018). Section 2 of the FAA provides in relevant part:

> "A written provision in \*\*\* a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract \*\*\* shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 USC § 2. The Oregon Uniform Arbitration Act similarly provides that an "agreement \*\*\* to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." ORS 36.620(1). Both Oregon and federal law state that the issue of whether an agreement to arbitrate exists is reserved for the court. ORS 36.620(2) ("[T]he court shall decide whether an agreement to arbitrate exists."); ORS 36.625(2) (providing that if a party alleges there is no agreement to arbitrate, "the court shall proceed summarily to decide the issue"); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 US 63, 69, 139 S Ct 524, 202 L Ed 2d 480 (2019) ("[T]he court determines whether a valid arbitration agreement exists."). Moreover, that issue is reserved for the court even in the presence of a delegation provision. *See Coinbase*, 602 US at 145 ("[B]efore \*\*\* the delegation

provision * * * can be enforced, a court needs to decide what the parties have agreed to.").[1]

Based on the foregoing authorities, we agree with plaintiff that the court, and not the arbitrator, should decide the threshold question of whether a contract to arbitrate exists between the parties. Reserving that determination for the courts comports with traditional principles of contract formation. *See Drury v. Assisted Living Concepts, Inc.*, 245 Or App 217, 221, 262 P3d 1162 (2011) ("To form a contract, there must be a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." (Internal quotation marks omitted.)). "A contract does not arise because one party desires it; there must be *mutual* assent." *Moyer v. Columbia State Bank*, 315 Or App 728, 737, 503 P3d 472 (2021) (emphasis in original). Because arbitration is a matter of contract, a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Drury*, 245 Or App at 221 (internal quotation marks omitted); *see also First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 943, 115 S Ct 1920, 131 L Ed 2d 985 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Here, the trial court properly considered whether an agreement to arbitrate arbitrability existed between decedent and defendant. It concluded that defendant was not a party to the Arbitration Agreement executed between BTC and decedent. It also noted that, based on the language of the agreement, no reasonable resident would believe they were entering into an arbitration agreement with defendant. By signing the Arbitration Agreement, decedent may

_____

[1] Many federal circuits also confirm that a court, and not an arbitrator, must determine issues of contract existence. *See, e.g.*, *Newman v. Plains All American Pipeline, L.P.*, 23 F4th 393, 398, *reh'g den*, 44 F4th 251 (5th Cir 2022) ("The parties cannot delegate disputes over the very *existence* of an arbitration agreement." (Internal quotation marks and brackets omitted; emphasis in original.)); *Ahlstrom v. DHI Mortgage Company, Ltd., L.P.*, 21 F4th 631, 635 (9th Cir 2021) (holding that "parties cannot delegate issues of formation to the arbitrator"); *Fedor v. United Healthcare, Inc.*, 976 F3d 1100, 1105 (10th Cir 2020) ("The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause * * *.").

have agreed to arbitrate with BTC, but she did not agree to do so with defendant. It follows that, because there was no agreement to arbitrate between decedent and defendant, there was no reason for the court to send the arbitrability issue to an arbitrator.

We could conclude here our discussion over defendant's first assignment of error. But defendant contends that, despite it not being a signatory to the Arbitration Agreement, plaintiff's challenge to arbitrability nevertheless had to be decided by the arbitrator and not the trial court pursuant to the terms of the agreement and the JAMS rules incorporated therein. We therefore consider whether, under the Arbitration Agreement executed with BTC, decedent agreed to arbitrate arbitrability in a dispute with a nonparty to the agreement.

As discussed above, in determining who should decide arbitrability, there is an initial presumption that the question should be resolved by the court. *See* ORS 36.620(2) ("[T]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *Granite Rock Co. v. International Broth. of Teamsters*, 561 US 287, 296, 130 S Ct 2847, 177 L Ed 2d 567 (2010) ("[W]hether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination." (Internal quotation marks omitted.)). However, parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence. *Lumm*, 290 Or App at 46. Because a party who has not agreed to arbitrate will normally have a right to the court's decision, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Coinbase*, 602 US at 149 (internal quotation marks and brackets omitted).

Thus, the issue before us is whether the agreement demonstrates clear and unmistakable evidence of decedent's intent to arbitrate arbitrability with defendant. Defendant correctly points out that JAMS Rule 11(b) does delegate to the arbitrator disputes over "formation, existence, validity, interpretation or scope of the agreement under which

Arbitration is sought, and who are proper Parties to the Arbitration." Defendant contends that the incorporation of the JAMS rules, and the delegation provision in JAMS Rule 11(b), show clear intent to have an arbitrator determine those issues. Although we do not foreclose the possibility that the incorporation of JAMS rules could be evidence of clear and unmistakable intent to arbitrate arbitrability, to make that determination, we must look at the arbitration agreement as a whole, and not just the delegation provision in a vacuum.[2] *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (in interpreting a contract provision, we must examine the context of the contract as a whole). Moreover, "given the principle that a party can be forced to arbitrate only those issues it specifically agreed to submit to arbitration," a court should not interpret "silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options*, 514 US at 945.

Considering the Arbitration Agreement as a whole, it does not appear clear and unmistakable that decedent agreed to arbitrate arbitrability with defendant. Defendant argues that decedent agreed to arbitrate all disputes arising out of care provided at the Facility, and that language is broad enough to encompass claims against third parties who provided care to decedent at BTC. Defendant incorrectly reads that portion of the agreement in isolation. According to the agreement, the Facility and the Resident agreed to "submit to binding arbitration all disputes against each other and their respective Legal Representatives, affiliates, governing bodies and employees, arising out of, or in

---

[2] Federal case law has stated that a delegation provision must be "read in the context of the arbitration clause as a whole." *Rogers v. Tug Hill Operating, LLC*, 76 F4th 279, 288 (4th Cir 2023), *cert den*, ___ US ___, 144 S Ct 818 (2024). In *Rogers*, the Fourth Circuit determined that, in context of the entire agreement, the plaintiff did not agree to arbitrate threshold issues with a nonsignatory third party. *Id.* Similarly, the Second Circuit has stated that incorporation of procedural rules (such as JAMS rules) "does not, *per se*, demonstrate clear and unmistakable evidence of the parties' intent to delegate threshold questions of arbitrability to the arbitrator where other aspects of the contract create ambiguity as to the parties' intent." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F4th 308, 318 (2d Cir 2021).

any way connected with, the care provided at this Facility under the terms of the Admission Agreement." The Facility is not defined to include defendant or third-party contractors. Defendant is also not a legal representative, affiliate, governing body, or employee of BTC. Nor is defendant named anywhere in either the Admission Agreement or the Arbitration Agreement. Although decedent may have agreed to arbitrate arbitrability with the Facility or BTC pursuant to the JAMS rules and the rest of the agreement—an issue which we need not decide—it does not appear clear and unmistakable that she agreed to do so with defendant. We therefore cannot presume that decedent agreed to arbitrate arbitrability with defendant.

For similar reasons, we conclude that defendant's reliance on *Gozzi v. Western Culinary Institute, Ltd.*, 276 Or App 1, 366 P3d 743, *adh'd to as modified on recons*, 277 Or App 384, 371 P3d 1222 (2016), is misplaced. In that case, the plaintiffs contended, among other issues, that the arbitration agreement between the parties was unconscionable. *Id.* at 8. We concluded that the delegation provision in the parties' arbitration agreement clearly and unmistakably delegated issues of enforceability to an arbitrator, and therefore we directed the unconscionability issue to be decided in arbitration. *Id.* at 12. Defendant maintains that, in this case, pursuant to *Gozzi*, the delegation provision requires an arbitrator to determine threshold arbitrability issues. However, in *Gozzi*, there was no dispute over whether an agreement existed between the parties; the parties agreed that the plaintiffs signed contracts containing arbitration agreements with the defendant. *Id.* at 3. *Gozzi* provides defendant no help because, here, the trial court properly determined that there was no agreement at all between the parties. For the reasons discussed above, the trial court did not err in deciding the issue of arbitrability.

We turn now to defendant's second assignment of error. Although we conclude that defendant is not a party to the Arbitration Agreement, we must consider whether it nevertheless has any right to enforce the agreement. Defendant argues that the trial court erred in denying arbitration on the merits because defendant was an intended beneficiary of the agreement, and as such was entitled

to enforcement.[3] Defendant claims that, by signing the Admission Agreement, decedent consented to treatment at BTC, including to any therapy services provided by defendant. Defendant reasons that it would not have provided care to decedent absent that consent, and therefore it is a third-party beneficiary to the Arbitration Agreement between BTC and decedent.

The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *Arthur Andersen LLP v. Carlisle*, 556 US 624, 631, 129 S Ct 1896, 173 L Ed 2d 832 (2009). We therefore look to Oregon contract law to determine whether defendant can compel arbitration as a third-party beneficiary. "Generally, a third party's right to enforce a contractual promise in its favor depends on the intentions of the parties to the contract." *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 149, 227 P3d 796 (2010). Under Oregon law, only intended third-party beneficiaries are entitled to enforce an agreement. *Stonecrest Properties, LLC v. City of Eugene*, 280 Or App 550, 556-57, 382 P3d 539 (2016). To be an intended beneficiary, the parties must have had the intent to confer a right or benefit on the third party. *Id.* at 557. But if the third party has paid no value and there is no intention to confer a contract right on that party, then the party is an incidental beneficiary who is not entitled to enforce the agreement. *Id.* While the third party does not need to be named in the contract, "the failure to do so may serve as an indication that the promisee did not intend to confer a right upon it." *Id.* (internal quotation marks omitted).

By its terms, the Arbitration Agreement applies to the parties and "their respective Legal Representatives, affiliates, governing bodies and employees." That express language, coupled with the fact that defendant is not named

---

[3] Defendant also argues that the trial court erred in denying arbitration because plaintiff's claim fell within the scope of the Arbitration Agreement decedent signed with BTC. We reject that argument for the same reason we determined that decedent did not clearly and unambiguously agree to arbitrate with defendant. We do not read the Arbitration Agreement as including claims against third-party contractors. Nor does defendant allege that it is an agent or successor-in-interest of BTC. Therefore, we will not stretch the agreement beyond its express terms.

in the agreements, persuade us that defendant is not an intended beneficiary. Our review of the agreements revealed no clear expression that BTC and decedent intended to confer a benefit or right to defendant.

We also distinguish *Livingston*, on which defendant relies to argue that the language of the Arbitration Agreement is broad enough to encompass claims against nonsignatories. In *Livingston*, although we concluded that the arbitration clause was "broad enough to encompass claims against nonsignatories[,]" we clarified that, there, the wording of the agreement "support[ed] the interpretation that the parties intended that [the defendant's] employees and agents could avail themselves of its terms." *Livingston*, 234 Or App at 150. *Livingston* does not apply here, where defendant is a separate and unaffiliated entity without an agency relationship with BTC. Unlike *Livingston*, the wording of the agreement here is not broad enough to include defendant.

For those reasons, we conclude that defendant was not an intended third-party beneficiary to the Arbitration Agreement between BTC and decedent, and therefore does not have the right to enforce that agreement. In sum, the trial court did not err in denying defendant's motion to compel arbitration.

Affirmed.